MUNICIPALITY OF GUAYANILLA, Plaintiff and Appellant, *v.* PUBLIC SERVICE COMMISSION OF PUERTO RICO, Defendant and Appellee; JESÚS STELLA RODRÍGUEZ, Intervener and Appellee.

No. 7509.  Argued March 15, 1938.—Decided May 31, 1938.

264

*Pedro M. Porrata* and *Ismael Soldevila* for appellant. *Leopoldo Tormes* for intervener. *B. Fernández García, Attorney General,* and *T. Torres Pérez* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Jesús Stella Rodríguez, the owner of more than 500 cuerdas of land lying in the Municipal District of Aguadilla and planted by him to sugar canes, complained in the Public Service Commission of Puerto Rico that the American Railroad Co. of Puerto Rico had refused his request for the installation of a railroad siding at kilometers 256 and 257 of the main track of said railroad line on the ground that there is a rule of the Public Service Commission which prohibits the building of sidings within two kilometers from any existing siding, and the siding known as "Peñoncillo" is situated less than two kilometers from the place designated by the complainant. It was alleged in the complaint that the respondent's position was without justification, arbitrary and prejudicial to him; that the siding would be a public one and available to anybody who wished to take advantage of it. He finally prayed for an order directing the installation of the siding in the way and at the place as requested, and for any other pronouncement in accordance with the law and the facts.

On September 18, 1933, the commission held a hearing at which appeared complainant Stella Rodríguez and the American Railroad Co. of Puerto Rico through their respective counsel. Both parties introduced their evidence from which it appeared to have been shown that the place selected by the complainant for the building of the siding was most suitable because there the road is nearest the railroad track and because of the fact that there is in the neighborhood a

considerable amount of sugar canes which require at present to be hauled to the Guayanilla station as the nearest place from which the canes can be loaded and distributed; that transportation to the Guayanilla station becomes very difficult owing to the road traffic, the loss of canes and probable injury to children who climb on oxcarts and trucks for the purpose of snatching bits of canes; that the "Peñoncillo" siding is inadequate as there are no roads leading to it; that the land where the siding is sought to be built belongs to the American Railroad Co. of Porto Rico; that at the place in question from 10 to 12,000 tons of canes could be loaded, and the traffic of carts loaded with canes during the grinding season greatly damages the roads.

In view of the fact that the objection of the respondent rested only on the rule of the commission already mentioned, the latter decided at the close of the hearing to grant the request of the complainant and as an exception to the rule ordered the granting of the siding at the place sought.

At this stage, the Municipality of Guayanilla appeared on October 2, 1933, before the commission and filed a motion to be allowed to intervene in the proceedings on the ground that it had had no knowledge of the complaint until September 28, 1933; that the order sought affected the rights of the municipality; that the complaint failed to show the person or persons who owned the land over which it was sought to build the siding, and that by such siding municipal property would be encroached upon and the use of a municipal road would be obstructed.

Pursuant to the above motion, the commission unanimously decided to leave the matter pending until the railroad company should submit a map of the place where the siding was to be built and that if it appeared therefrom that the rights of the municipality would be affected it would then grant the intervention sought. For the purpose of passing upon the motion, after examining the map, the commission held a new hearing on November 22, 1933, at which there

appeared the complainant, the respondent and the intervener, all represented by counsel. As a result the municipality was allowed to intervene and November 27, 1933, was set to hear its evidence. After the above hearing the commission made the following order on December 21, 1933:

"After duly examining and considering a report from the Public Service Commissioner, dated December 19, 1933, the commission, on motion of Mr. Delgado, resolved to endorse the same in every particular, thus finally passing upon the complaint filed by Jesús Stella Rodríguez against the American Railroad Co. of Porto Rico in regard to its refusal to build a siding between kilometers 256 and 257 of the main line of said railroad."

The report referred to by the commission in the foregoing decision reads textually as follows:

"December 19, 1933.—*In re* complaint of Jesús Stella Rodríguez against American Railroad Co. of Porto Rico regarding refusal to build a siding between kilometers 256/257 of the main line of said railroad. Case No. C–173."

"Jesús Stella Rodríguez appeared in the present case with a request to have a siding laid down near his land so as to enable him to ship by rail a certain amount of canes. The American Railroad Co. appeared and stated that the only ground for its objection to the building of the siding at the place designated was that said siding would be located about 1½ kilometers from another siding already laid down and that this would infringe a rule of the Public Service Commission and that for that reason the case was submitted to the commission.

"A public hearing was held with the appearance of the American Railroad Company and from the testimony of engineer Etienne Totti of the railroad company the Commission came to the conclusion that the Peñoncillo siding, near which the one sought here would be located, has been for about one and a half or two years unserviceable, that is, that it is not used; and furthermore that owing to improvements in switch rails, which are one-piece rails, the danger involved by the proximity of sidings has practically disappeared.

"After hearing the evidence the commission unanimously adopted the following resolution: 'To ORDER—and this must not be construed as a precedent—the installation of the said siding conformable to the technical recommendations to be made by the engineer of the

American Railroad Company, the parties being directed to execute the contract as required in such cases.''

''It was of course shown that the petitioner is the owner of a large tract of land and that he grows from 7 to 10,000 tons of canes.

''The above resolution was adopted on September 18, 1933, and on the 31st of the same month a wire was received here from the Mayor of Guayanilla requesting that 30 days be given him for the preparation of a map that would show that rights of the municipality would be injured thereby. The commission granted to the parties a term for the filing of the map in question and set a date for a new public hearing, the municipality being afforded an opportunity to be heard. The commission held a new hearing and heard the municipality which appeared by counsel.

''The contention of the municipality was first that the siding sought was going to encroach upon part of a municipal road. It appears on the contrary from the evidence submitted before the Commission and from the maps here produced that the railroad company owns a strip of land adjoining a municipal road and that the said road would in no way be used in connection with the building of the siding. The siding would be laid down entirely on land belonging to the railroad company; and it appears from the testimony of the very engineer of the railroad company Mr. Totti that the strip of land designated for the purpose is more than sufficient for amply laying down the siding in question.

''Another contention of the municipality was that if the siding were built at the place indicated, more carts would use the road in question with great inconvenience to the trafffic. Every citizen is entitled to the use of municipal and insular roads and until otherwise shown we shall not assume that the building of one single siding would cause such congestion of the traffic as to be prejudicial to the public at large. After all, the grinding season lasts about five or six months. It appears from the testimony given before us that the road in question is very little used and that there is scarcely any traffic over it.

''For the foregoing reasons and taking into account the doctrine already established in other cases we think that it is our duty to afford Mr. Stella Rodríguez facilities so that he may use freely the railroad for shipping his canes and that the permit sought in order to build the said siding, having first executed the proper contract,

be granted. Therefore, the objection must be overruled. (Signed) Miguel A. Muñoz, Public Service Commissioner of Puerto Rico."

Feeling aggrieved by that decision, the municipality took an appeal on January 15, 1934, to the District Court of San Juan and assigned twelve errors as having been committed by the Public Service Commission which the court reduced to the following seven, because some of them were unnecessarily repeated by paraphrasing them:

"1. That the application fails to allege facts to warrant the remedy sought.

"2. That the order is void because its commands are not worded in the form and manner required by law.

"3. That the order is void for lack of any specific finding of facts.

"4. That the Public Service Commission erred in settling questions of ownership for whose determination it had no jurisdiction.

"5. That the order made by the commission was not justified by the finding.

"6. That the Public Service Commission erred in ordering the installation of a siding at a place full of danger for such persons as use the public and municipal roads in the neighborhood of the siding ordered to be built.

"7. That the Public Service Commission erred in ordering the laying down of a siding in violation of the two-kilometer rule established by the commission itself."

On the same day and before the same court it filed a motion for an interlocutory order to stay the execution of the order appealed from pending the appeal and offered "to furnish any bond that the court might consider adequate according to the law applicable in the present case." On January 15, 1934, the court served notice on the Public Service Commission and on the American Railroad Co. of Porto Rico to appear on January 25, 1934, and show cause why the supersedeas sought should not issue, and until then, a $2,000 bond having first been furnished, the American Railroad Co. of Porto Rico was enjoined from executing the order of the commission. On January 20, 1934, the court ordered the

summoning of the parties by wire and, on motion of the commission, made Mr. Stella Rodríguez a party to the proceeding on February 15, 1934. On March 9 of that same year it stayed the order of the commission, a $2,000 bond to be first furnished for the benefit of any party that might be prejudiced.

Some time afterwards, that is, on April 9, 1935, Mr. Stella Rodríguez moved for the furnishing by the Municipality of Guayanilla of an additional bond or for extending the one already furnished to $5,000, because owing to the time elapsed the $2,000 bond was then insufficient. Although this does not appear from the record, it seems that the court set April 15, 1935, for hearing the parties on the motion for the extension of the bond, because on April 13 the municipality moved that the hearing be postponed to any day subsequent to April 22. Notwithstanding the above motion for postponement the court heard the petitioner on the day previously set and on May 29 extended the original bond to $5,000. On August 24 and 27, 1935, respectively, Jesús Stella Rodríguez and the Public Service Commission filed their answers in the district court. By an order dated February 16, 1937, the district court dismissed the appeal taken by the Municipality of Guayanilla, intervener and appellant, and affirmed in every particular the order of the commission of December 21, 1933, with costs against the municipality and $300 as attorney's fees. The municipality appealed from the above decision to the Supreme Court. Seven errors are assigned in its brief. As the first and second errors are closely related, we will discuss them together.

They read as follows:

"1. The District Court erred in requiring a $2,000 bond from the Municipality of Guayanilla by its interlocutory order (supersedeas) of March 9, 1934.

"2. The District Court erred in granting the motion for an extension of the bond by its order of May 29, 1935."

Neither can the appellant raise nor must this court pass upon questions introduced by the municipality in the above two errors. We will, therefore, confine ourselves to a mere outline of them.

The appellant relies on section 80 of the Public Service Act of Puerto Rico (Act No. 70), Session Laws of 1917, vol. II, p. 528 and on section 356 of the Code of Civil Procedure (1933 ed.). The former reads as follows:

"Section 80.—*Supersedeas on appeal.*—No appeal from any order of the Commission (except as hereinafter provided) shall in any case operate as a supersedeas of the order appealed from, unless the aforesaid proper court shall, by an interlocutory order, make said appeal as a supersedeas; which interlocutory order shall be made after such notice to the commission and other parties of record, and after a hearing upon said application for an interlocutory order of supersedeas. *Upon the granting of a supersedeas upon the application of a public-service company in any case (except as hereinafter provided), the court may, in its discretion, require the filing of a bond in favor of The People of Puerto Rico, for the use of all parties aggrieved,* in such sum and condition as the court may by its order direct, *or may grant the supersedeas upon such other terms and conditions as the court in its discretion prescribes; Provided, however,* That in all cases of appeal by a public-service company from an order of the commission establishing, changing or altering, or in any manner affecting the prices, rates, point rates, or charges for any service, such appeal shall operate as a supersedeas upon the filing of a bond in favor of The People of Puerto Rico, in the said court, by said public-service company, for the use of all parties damaged by the failure of such company to comply with the order appealed from, during the period of such supersedeas. Said bond to be in such sum as shall be fixed by the court, and with sureties to be approved by the court, shall be conditioned for the repayment to all such aggrieved parties of any excess over the rate or charge fixed by the commission, which shall be received by such public-service company after the making of such order by the commission, if the said order shall be finally affirmed, and may also contain such further conditions as the court may order and direct." (Italics ours.)

Appellant urges that, pursuant to said section, the district court is empowered to require bonds where the order

of supersedeas is granted on application of a public-service company, but that it is not so empowered in the case of any other entity or person not considered by law to be a public-service company.

The other section invoked, that is, section 356 of the Code of Civil Procedure (1933 ed.) reads as follows:

"Section 356.—In any civil action or proceeding wherein the Island or the people of the Island is a party plaintiff, or any insular officer in his official capacity, or on behalf of the Island, *or any city or district, is a party plaintiff or defendant,* no bond, written under-taking, or security can be required of said Island, of the people thereof, or any officer thereof, or of any city; but on complying with the other provisions of this Code, *said Island or people thereof, or any insular officer, acting in his official capacity, or any city, or district, has the same rights, remedies and benefits as if the bond, undertaking or security were given and approved as required by this Code."* (Italics ours.)

It is urged that this section corroborates appellant's interpretation of the previous one.

▮ Let us consider the reasons that prevent us from passing upon the questions submitted for our consideration. In the verified motion for a supersedeas filed in the court below by the appellant to stay the execution of the order of the commission until after the case was finally decided, it said, as an invitation to the court and to the other party so as to have its request granted, that it was ready to furnish whatever bond might be required of it. It did not say then, as it maintains now, that it was entitled to the supersedeas without first furnishing bond; it did not allege that section 80 of the Public Service Act of Puerto Rico and section 356 of the Code of Civil Procedure were against the requiring of the bond. Why did it not refrain from offering securities if it deemed them invalid? It was the municipality that invited the trial court to do what it now disclaims, that is, to fix a bond or any other security to be furnished by it as a condition precedent to the granting of the interlocutory order of supersedeas. This is why we think that even though

the court may have erred in requiring of the municipality to furnish bond, it can not avail itself of it in order to complain of the order appealed from, since the municipality itself invited the court to commit the error.

*"Invited error.*—The rule is well settled that a party cannot successfully assign as error a ruling which he has himself invited the trial court to make; if he asks or consents that the trial court proceed in a certain manner he will not be allowed to complain of such action. . ." 2 R.C.L. 238, sec. 198 and cases therein cited.

Moreover, it is urged by appellee Stella Rodríguez in his brief, and this appears from the record, that the appellant furnished without objection the $2,000 bond required of it, and later on the additional one for $3,000. The appellant did not even appear at the hearing of the motion upon the extension of the bond, held in the district court on April 15, 1935, where the appellant might have defeated the request for a larger bond and perhaps even to have the interlocutory order of March 9, 1934, set aside. To our mind the conduct of the municipality implies the acknowledgment of the validity of both interlocutory orders and a waiver of its right to attack them, especially on appeal.

". . . As to what amounts to a waiver, a proper statement would seem to be that any act on the part of a party by which he impliedly recognizes the validity of the judgment against him operates as a waiver of his right to appeal therefrom or to bring error to reverse it. . ." 2 R.C.L. 58, sec. 38.

We might go even further and apply to this case the rule not precisely of estoppel but which partakes of its elements and is undoubtedly based on the same principle, to the effect that a party will not be allowed to maintain inconsistent positions in judicial proceedings. See 10 R.C.L. 698, sec. 26. So that we may also rule that the appellant not only waived its rights, if any, but is estopped from enforcing them now, even assuming that it ever had them. In its motion of January 15, 1934, for an interlocutory order of

supersedeas it offered to furnish any security that the court might consider to be required. Now in this court it maintains that the judge of the lower court was not empowered to require of it the furnishing of bond. This is a fully inconsistent position with the one previously assumed by it.

"As a general rule a party is estopped from taking a position which is inconsistent with one previously assumed in the course of the same action or proceeding. . . A court cannot acquire jurisdiction of the subject matter by estoppel, but one who has invoked the exercise of its jurisdiction upon a matter of which it has power to take cognizance cannot thereafter object thereto. . ." 10 R.C.L. 699 et seq., sec. 27.

See *Cortijo et al.* v. *Rosario et al.*, 33 P.R.R. 415; *P. R. Ben. Soc.* v. *Mun. of Ponce et al.*, 28 P.R.R. 773; *Figueroa* v. *Figueroa et al.*, 23 P.R.R. 435.

■ There is another circumstance, viz., that the lower court had no opportunity to pass upon the questions which the appellant now submits for our consideration. The rule established and generally followed by this court is not to consider on appeal such questions as were not raised in the court *a quo*. See *Municipality of Isabela* v. *District Court,* 36 P.R.R. 477; *Laviena et al.* v. *Ramos*, 35 P.R.R. 220; *Castro* v. *Quiñones*, 34 P.R.R. 780; *García et al.* v. *Rodríguez,* 27 P.R.R. 284; *González* v. *Cabrero*, 22 P.R.R. 318. See also 2 R.C.L. 69, sec. 52, and cases therein cited.

For the foregoing reasons, and taking further into account that even if the court below had made the two errors now under discussion it has not been shown that the appellant was thereby prejudiced, the two errors assigned must be held to be without merit.

■ The appellant also questions the validity of the order of March 9, 1934, viewed as a contract whereby the surety or sureties became bound to answer up to the sum of $2,000 for any damages that might be suffered by Stella Rodríguez, appellee, and therefore that its liability could not be increased by $3,000 under the order of May 29, 1935. The argument

is so weak that it does not deserve a long discussion. This last order of the court in its pertinent part reads as follows:

"The court became fully convinced of the insufficiency of the bond originally furnished and it therefore orders that in harmony with the interlocutory order of March 9, 1934, already mentioned, the bond then required be increased from $2,000 to $5,000. It must therefore furnish an additional bond for $3,000 as from March 9, 1934, upon the same conditions as the $2,000 bond already furnished, and for such purpose the Municipality of Guayanilla is granted 5 ·days to be computed from the service of notice of this order, with the warning that should it fail to comply with the terms of this ruling the said interlocutory order of March 9, 1934, shall be suspended or left without effect, without prejudice to any rights of the petitioner in the present case."

The lower court did not enlarge the liability of the original surety or sureties. It ordered the furnishing of an additional bond in the sum of $3,000 that might or might not have been willingly subscribed by the original surety or sureties. If they did subscribe the same, they assumed willingly a new obligation that in no wise makes the former one more burdensome. If the second bond was subscribed by a person or persons other than that or those who signed the first, there is less ground for alleging that the liability of the original sureties had been made heavier.

■ The appellant contends that the lower court abused its discretion when it granted on May 29, 1935, the motion to extend the bond, because at that time the respective answers of the Public Service Commission and of the appellee, Stella Rodríguez, had not yet been filed. We do not think that any abuse of judicial discretion can be inferred from that single fact.

[7, 8] The third error is assigned as follows:

"III.—The District Court erred in proceeding to the hearing of the motion to extend the bond upon shorter notice on the municipality than that prescribed in section 317 of the Code of Civil Pro-cedure."

The appellant relies on section 317 of the Code of Civil Procedure which reads as follows:

"Section 317.—When a written notice of a motion is required by this Code, it must be given, unless a different kind is prescribed, if the hearing is had in the same district in which the action is pending, or the proceeding had, five days before the time appointed for the hearing; otherwise, ten days. When the notice is served by mail, the number of days before the hearing must be increased one day for every twenty-five miles of distance between the place of deposit and the place of service; such increase, however, not to exceed in all thirty days; but the court or judge may prescribe a shorter time. Copies of all the moving papers, except records of the court and files in the action, must be served with the notice, or with an order to show cause, but no written notice of any motion affecting the pleadings or for judgment, or of any motion made during the progress of the trial, shall be required."

Neither the motion for setting the hearing nor the notice from the clerk of the court upon the parties regarding such hearing appears from the record. Nor has a certificate from the above officer to that effect been sent up or made part of the record either. In order to show the date of the filing of the motion for an extension of the bond and that set for the hearing the appellant has recourse to the order of the court of May 29, 1935, deciding said motion. This court has repeatedly held that facts set out in opinions or orders of judges can not serve for showing before this court facts which occurred during the prosecution of an action in the court below. *Polanco* v. *Goffinet et al.,* 33 P.R.R. 319; *Torres* v. *Vidal,* 28 P.R.R. 390; *Guerra et al.* v. *Acha et al.,* 27 P.R.R. 631; *Albite* v. *Lecumberri,* 22 P.R.R. 795; *Suc. of Orrach* v. *Suc. of Polanco,* 17 P.R.R. 695.

This would be sufficient to dispose without further consideration of the third assignment of error. But the point is that even though the appellant should place us in a position enabling us to pass upon the question, we would always have to decide against it, since the statute clearly reserves to the court or judge the right to fix a shorter time. And although

it is a fact that only in very exceptional cases is it permissible to set hearings upon shorter notice (*García* v. *Mazarredo et al.*, 34 P.R.R. 307, 311), the appellant has failed to show, although it tried to do so, that the court abused its discretion, bearing in mind the nature of the present proceeding and the special and summary character of the order sought (*Morfi* v. *Fajardo Development Co.*, 17 P.R.R. 766, 772). Nor has it shown that it suffered any damages. *Carballo* v. *Rossy, District Judge*, 27 P.R.R. 855, 857; *Ríos* v. *Rosaly*, 27 P.R.R. 495, 498. This assignment is without merit.

The fourth assignment reads as follows:

"IV.—The District Court erred in allowing Mr. Stella to file his answer one year and seven months after the filing of the writing of appeal, without his having intervened in the proceeding before the court."

It is true that the answer of intervener Stella Rodríguez was not filed until after the lapse of one and a half years from his having been made a party to the proceeding; but as according to section 87 of the Public Service Act: "In all actions and proceedings . . . process shall be served and the practice and rules of evidence shall be the same as in civil actions, except as otherwise herein provided," and in civil actions the time for filing an answer is not jurisdictional but the court may extend the same pursuant to section 140 of the Code of Civil Procedure, and as it has not been shown, nor even tried, that in doing so it abused its discretion, the error must be held to be without merit.

The fifth assignment says:

"V.—The District Court likewise erred in failing to declare fatal the term of thirty days granted by section 82 of the Public Service Act to the Commission for filing its answer and in allowing it to do so one year and seven months after the filing of the writing of appeal."

In view of section 87 of the Public Service Act of Puerto Rico, *supra*, and of section 140 of the Code of Civil Procedure, and of our statements when discussing the fourth assignment

of error, it becomes unnecessary to further consider this assignment which must be held to be without merit.

The sixth reads as follows:

"The District Court erred in failing to sustain the appeal and reverse the order appealed from on all or each of the grounds alleged in the writing of appeal."

In this assignment the appellant discusses the 12 errors assigned against the Public Service Commission in its appeal to the district court.

The lower court, after condensing the said twelve assignments of error for the reasons already stated, decided in short as follows: As to the first, that even assuming that the petition has some technical defects the latter are cured by the evidence from which it appears that the facts as shown warrant and render necessary in the furtherance of justice the granting of the siding sought by the complainant. It said:

"The objection of the Municipality of Guayanilla is so immaterial that we really fail to understand the reasons for so much rancor and persecution against the complainant. It seems as if the mayor of Guayanilla (it appears from the record that the Assembly has not authorized such opposition) intends to boycott the complainant's business in such a way as to compel him against his will and perhaps to detriment of his interest to grind his canes in a certain sugar mill."

As to the second and third assignments, it said that the order of the commission was clear and final and that it contained the findings on which it was based, because it endorsed "in all its parts" the report of its president, from which clearly arose the facts which it considered to have been shown and which finally settled the issue.

In connection with the fourth assignment, it held on more than sufficient ground, to our mind, that the commission did not decide by its order any conflict of title because never "did the municipality even hint that the land on which the siding was going to be built belonged to it"; that the original contention of the intervener was that the siding would increase the traffic over the discarded road, which contention

it subsequently changed by alleging that the siding rendered the said road more dangerous; that it did not challenge the ownership or at least the possession which the complainant company alleged to have had of the land in question for at least thirteen years at the time of the hearings before the Public Service Commission. In answer to the argument of the municipality that the last paragraph of section 38 of the Organic Act does not confer such authority upon the Legislature, the court says that such paragraph is not the only source whence the Legislature can derive authority to confer powers on the commission; that another source of powers can be found by the appellant near the end of the first paragraph of said section 38 of the Organic Act which says:

". . . The said commission is empowered and directed to discharge all the executive functions relating to public service corporations heretofore conferred by law upon the executive council and such additional duties and functions as may be conferred upon said commission by the legislature. . ."

To the other argument of the appellant to the effect that even assuming that the Legislature had the power to delegate such authority, it has not done so in the case of "connections" of sidings but in those of the "installation" thereof, according to the case of *Re Lycoming Edison Co.,* P.U.R. 1917–C, 73, the answer of the court was that said case did not support appellant's contention but was rather decisively adverse thereto. The court said:

"In the first place, the case cited is not from the Supreme Court or from any other Pennsylvania court. It is an order from the Public Service Commission of the above State and its ruling is that the commission is without power to order the building of a siding by a railroad if for that purpose land must be used which does not belong either to the railroad company, or to the petitioner, or to any other person willing to let it be used."

As to the contention that the order issued by the commission is not warranted by the finding made, the lower court held that since the land where the siding was ordered

to be built belonged to the railroad company and the petitioner had undertaken to defray the expenses required for its construction, the right to the use of said siding being conferred not only on the petitioner but on anybody who might need to use the same, without discrimination or preference, the necessity for its construction having been shown and the control thereof being all the time in the railroad company, it can not be concluded, as claimed by the appellant, that the order was unwarranted.

And now, as to the sixth and seventh errors assigned, we will transcribe from the order of the court below its ruling thereon as follows:

"As to the danger that might be involved in the building of the siding at the place designated, the Public Service Commission heard sufficient evidence upon the matter, supported by the experts of the railroad company who positively state that owing to the modern switch rails now used in connection with sidings the danger pointed out by the appellant and its witnesses does not exist. The commission resolved the conflict in favor of the complainant and we think that its conclusion is upheld by the evidence.

"Finally, we fail to see any legal reason why the commission, in extraordinary cases like the present one, could not, in the furtherance of justice, suspend or disregard its own rule which prohibits the installation of a siding within two kilometers from another. The fact must not be overlooked that the 'Peñoncillo' siding is not only without use but it is useless because of its location. Actually there is no such siding. Moreover, a rule of a board or commission can not be treated as a law that must be enforced until repealed by another law. On several occasions, for the purpose of serving the ends of justice, our Supreme Court has failed to apply its own rules. In the present case the commission rightly used its discretion in failing to apply the rule in question in order to prevent an injustice."

The judge of the lower court disposed, from our viewpoint correctly, of the twelve errors assigned. His opinion conforms to the spirit of the law.

The seventh assignment refers to the imposition of costs and attorney's fees. The obstinacy of the appellant is patent. It was so considered by the lower court in its opinion and

we fully agree with its statements. Such obstinacy has gone beyond the limits and is palpable in this appeal. Not only must the seventh assignment be declared to be without merit but in compliance with the authority conferred on this court by section 327 of the Code of Civil Procedure, as amended by Act No. 69 of May 11, 1936 (Session Laws of 1936, p. 352), the municipality, appellant herein, must be adjudged to pay Stella Rodríguez, appellee, the sum of $150 disbursed by him as his attorney's fees in this appeal.

The judgment of the lower court must be affirmed.